IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AMY L. BOSTIC, TRUSTEE | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:19-cv-00774 |
| | § | |
| WELLS FINANCING, INC. | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT
TO AVOID TRANSFER OF DEBTOR'S PROPERTY**

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

NOW COMES Plaintiff Amy L. Bostic, in her capacity as the Chapter 7 Trustee for the bankruptcy estate of Landash Corporation (the "***Debtor***"), and files her *Plaintiff's Original Complaint to Avoid Transfer of Debtors' Property* (the "***Complaint***") against Wells Financing, Inc. and alleges, based upon knowledge as to her own acts and otherwise upon information and belief, as follows:

**JURISDICTION AND VENUE**

1.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1334 with original and exclusive jurisdiction of all cases under Title 11 of the United States Code (the "Bankruptcy Code").

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1409.

## PARTIES

3.      Plaintiff, Amy Bostic (the "*Trustee*" or "*Plaintiff*"), is the duly qualified and acting Chapter 7 Trustee of Landash Corporation in bankruptcy case number 18-50300 pending in the Southern District of Ohio, who may be served through her undersigned counsel.

4.      Defendant, Wells Financing, Inc. (the "*Defendant*"), is the recipient of the Transfers (defined below) that the Trustee hereby seeks to avoid. The Defendant may be served with process in this proceeding by serving its Registered Agent c/o Doug Neal, Registered Agent, 2030 S. Las Vegas Dr., Fort Worth, Texas 76108 or c/o Douglas Neal, President/Director, 7000 Oakmont Ter., Fort Worth, Texas 76132.

## STATEMENTS OF FACT

5.      On January 22, 2018 (the "*Petition Date*"), the Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Ohio under Case number 18-50300. Amy Bostic was appointed as Chapter 7 Trustee of the Debtor's bankruptcy estate.

6.      Prior to 2014, Jason E. Adkins ("*Adkins*"), the 100% owner of the Debtor and the principal of Midwest Coal LLC ("*Midwest Coal*"), approached Wells Financing with a purportedly viable investment opportunity (the "*Tire Investment*").  Adkins claimed that Midwest Coal had a warehouse of truck tires suitable for use on mining equipment vehicles (the "*OTR Mining Tires*"). The Tire Investment was generally set up to work as follows: (i) Wells Financing would purchase the OTR Mining Tires from various third party sellers; (ii) Wells Financing would send money for the OTR Mining Tires to a freight forwarder (selected by Adkins or John Eckerd) (the "*Freight Forwarder*"); (iii) OTR Mining Tires would be shipped to Houston and Wells Financing would have the receiving warehouse sign a warehouse lien; (iv) the Freight Forwarder was not to send

money out until the OTR Mining Tires arrived in Houston; (v) Midwest Coal would sell the OTR Mining Tires to a third party; and (vi) Midwest Coal would remit payment for the original purchase price of the OTR Mining Tires, as well any profits to Wells Financing or, alternatively, Wells Financing could reinvest the proceeds from the sale with Midwest Coal.

7.    At first, Wells Financing received payments from the purported OTR Mining Tire sales as Adkins had promised. However, Wells Financing made additional payments of approximately $15 million for OTR Mining Tires that Midwest Coal failed to deliver (the "*Undelivered Tires*"). In addition, Midwest Coal failed to return approximately $4 million Wells Financing used to reinvest or purchase new inventory ("*OTR Mining Tires*") with Midwest Coal.

8.    By the spring of 2015, Wells Financing determined it may have causes of action against Adkins, Midwest Coal, and others in respect of the failure of the Tire Investment and the Undelivered Tires. Wells Financing engaged counsel and eventually determined to enter into a forbearance arrangement.

9.    On or about July 1, 2015, Adkins and certain other Adkins-affiliated parties formalized their agreement that Wells Financing should be repaid the amounts Wells Financing paid for the Undelivered Tires. Accordingly, the following agreements were executed (the following described documents, together with any and all other or additional agreements, instruments, or other documents evidencing, or otherwise relating to the Note (as defined below) as the same may have been amended, modified, and/or assigned are hereinafter referred to collectively as the "*Forbearance Arrangement*"):

a. that certain Forbearance Agreement dated as of July 1, 2015 (the "*Forbearance Agreement*"), by and among Midwest Coal, Inc., Wells Financing, Adkins, John Eckerd, and La Mia Bella Famiglia LP;

b. that certain Promissory Note dated as of July 1, 2015, in the original principal amount of $13,200,000 (the *"Note"*), made by Midwest Coal and

payable to the order of Wells Financing;

c. those certain Guaranties dated as of July 1, 2015, executed by each
Adkins, John Eckerd, La Mia Bella Famiglia LP in favor of Wells
Financing (each such agreement, a "***Guaranty***"); and

d. that certain Stock Pledge Agreement dated as of July 1, 2015, executed by
La Mia Bella Famiglia LP in favor of Wells Financing (the "***Pledge Agreement***").

10.     Under the Forbearance Arrangement, Midwest Coal was to remit payments to
Wells Financing pursuant to the terms of a promissory note as a way for Wells Financing to recover
at least some of its investment. A true and correct copy of the Forbearance Agreement is attached
hereto as **Exhibit "1**."  A true and correct copy of the Note is attached hereto as **Exhibit "2."**  A
true and correct copy of the Guaranty is attached hereto as **Exhibit "3."**

11.     Landash Corporation is not a party to the Forbearance Agreement, the Note nor the
Guaranty.  Landash Corporation was under the control of Jason Atkins.

12.     Between May 22, 2015 to February 10, 2017 Landash Corporation transferred to
Wells Financing, 144 transfers totaling $5,650,000.  Also, between February 21, 2017 to March 9,
2017, Landash USA Corporation transferred to Wells Financing, 6 transfers totaling $285,000.  A
list of each individual transfer with dates and amounts is attached hereto as **Exhibit "4"** and fully
incorporated herein.

13.     In order for Landash USA to make the above referenced six transfers between
February 21, 2017 to March 9, 2017, Landash Corporation first made transfers totaling $825,000
to Landash USA from January 3, 2017 to March 1, 2017.  A list of the individual transfers with
dates and amounts from Landash Corporation to Landash USA is attached hereto as **Exhibit "5"**
and fully incorporated herein.

14.     The Debtor was insolvent at the time of the Transfers.

## CAUSES OF ACTION

### COUNT ONE -- AVOIDANCE OF FRAUDULENT TRANSFERS
### (Bankruptcy Code Section §548)

15.     The Plaintiff hereby incorporates all of the foregoing and ensuing allegations as if fully set forth herein.

16.     Pursuant to section 548 of the Bankruptcy Code, the Trustee may avoid transfers to the Defendant made at any time within the 2-year period prior to the Petition Dated (the "Two-Year Period")

17.     The Transfers made during the Two-Year Period were transfers of property in which the Debtor had an interest.

18.     With respect to each Transfer made during the Two-Year Period, the Debtor received less than reasonably equivalent value in exchange for each such Transfer and: (1) the Debtor was insolvent on the date that each such Transfer was made or became insolvent as a result of such Transfer; (2) the Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; or (3) the Debtor intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

19.     The Debtor was not liable to the Defendant under the Note, or for any other liability.

20.     In the alternative, the Transfers made during the Two-Year Period were made by the Debtor with the actual intent to hinder, delay, or defraud one or more creditors to whom the Debtor was indebted on or after the time of the Transfer.

21.     Accordingly, the Trustee may avoid the Transfers made during the Two-Year Period as a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(A).

## COUNT TWO -- AVOIDANCE OF FRAUDULENT TRANSFERS
### (Bankruptcy Code Section 544 and O.R.C. Section 1336.01 et seq.)

22.     The Plaintiff hereby incorporates all of the foregoing and ensuing allegations as if fully set forth herein.

23.     Pursuant to section 544 of the Bankruptcy Code, the Trustee has as of the Petition Date, and without regard to any knowledge of the Trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the Debtor by, among other things, a hypothetical lien creditor.

24.     Pursuant to Ohio Revised Code ("O.R.C.") section 1336.01 *et seq.*, the Trustee may therefore avoid any transfers made within the four-year period prior to the Petition Date or, if later, within one year after the transfer was or reasonably could have been discovered by the Trustee (together, the "***State Law Avoidance Period***").

25.     The Transfers made by the Debtor during the State Law Avoidance Period to or for the benefit of the Defendant were made either: (1) with the actual intent to hinder, delay, or defraud a creditor of the Debtor; or (2) without the Debtor receiving a reasonably equivalent value in exchange for the Transfers, when (a) the Debtor was engaged or was about to engage in a business or transaction for which the remaining assets of the Debtor were unreasonable small in relation to the business or transaction, or (b) the Debtor intended to incur or believed or reasonably should have believed it would incur, debts beyond her ability to pay as they became due.

26.     The Transfers made during the State Law Avoidance Period to or for the benefit of the Defendant were made without the Debtor receiving a reasonably equivalent value in exchange for the Transfers, and (a) the Debtor was insolvent at the time of each such Transfer or (b) the Debtor became insolvent as a result of such Transfer.

27.     The Plaintiff may therefore avoid all such Transfers made during the State Law Avoidance Period, including but not limited to the Property Transfer, pursuant to section 544 of the Bankruptcy Code and O.R.C. section 1336.01 *et seq*.

### COUNT THREE – RECOVERY OF PROPERTY
### (Bankruptcy Code Section 550)

28.     The Plaintiff hereby incorporates all of the foregoing and ensuing allegations as if fully set forth herein.

29.     The Plaintiff is entitled to avoid the Transfers, including but not limited to the Property Transfer, pursuant to sections 544 and/or 548 of the Bankruptcy Code and O.R.C. section 1336.01 *et seq*.

30.     The Defendant was the initial transferee of the Transfers or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Transfers were made.

31.     Pursuant to section 550(a) of the Bankruptcy Code, the Trustee is entitled to recover from the Defendant the Property, plus costs of this proceeding.

### COUNT FOUR – DISALLOWANCE OF CLAIMS
### (Bankruptcy Code Section 502(d))

32.     The Plaintiff incorporates herein all of the foregoing and ensuing allegations as if fully set forth herein.

33.     The Defendant is the transferee of the Transfers, including but not limited to the Property Transfer, which are avoidable under sections 544 and/or 548 of the Bankruptcy Code and recoverable under section 550 of the Bankruptcy Code.

34.     Pursuant to section 502(d) of the Bankruptcy Code, any claims (as such term is defined in the Bankruptcy Code), filed or unfiled, of the Defendant against the Debtor's estate

must be disallowed until such time as the Defendant pays to the Plaintiff an amount equal to the aggregate amount of the Transfers, plus interest and costs.

## COUNT FIVE -- ATTORNEYS' FEES, EXPENSES, AND COSTS OF COURT

35.     The Plaintiff incorporate herein all of the foregoing and ensuring allegations as if fully set forth herein.

36.     Pursuant to Rule 54 of the Federal Rules of Civil Procedure, made applicable herein by Rule 7054 of the Federal Rule of Bankruptcy Procedure, the Plaintiff is entitled to recover from the Defendant her costs and expenses incurred in connection with bringing this proceeding, as well as any other relief, legal or equitable, that this Court determines is appropriate, including prejudgment interest.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for judgment against the Defendant Wells Financing, LLC as follows:

A)  On Count One, for an Order avoiding all Transfers made by the Debtor to the Defendant within the Two-Year Period, including but not limited to the Property Transfer, pursuant to section 548 of the Bankruptcy Code;

B)  On Count Two, for an Order avoiding all Transfers made by the Debtor to the Defendant during the State Law Avoidance Period, including but not limited to the Property Transfer, pursuant to section 544 of the Bankruptcy Code and O.R.C. section 1336.01 *et seq*.;

C)  On Count Three, judgment in favor of the Trustee for recovery of the Property from the Defendant pursuant to section 550(a) of the Bankruptcy Code; *or in the alternative*, for a judgment against the Defendant in an amount be determined at trial for the aggregate amount of

the Transfers, including but not limited to the Property Transfer, pursuant to section 550(a) of the Bankruptcy Code;

D)  On Count Four, for an Order disallowing pursuant to section 502(d) of the Bankruptcy Code in full any and all claims of the Defendant, filed or unfiled, until the Defendant has returned to the estate all Transfers, including but not limited to the Property or the value of Property Transfer, that are avoidable;

E)  On Count Five, for pre-judgment interest and costs, in the total amount to be determined at trial; and

F) For any such other and further relief as this Court may deem necessary and proper.

DATED: March 28, 2019                    Respectfully submitted,

                                         QUILLING, SELANDER, LOWNDS,
                                         WINSLETT & MOSER, P.C.
                                         2001 Bryan Street, Suite 1800
                                         Dallas, Texas 75201
                                         (214) 871-2100 (Telephone)
                                         (214) 871-2111 (Facsimile)

                                         By:     /s/ John Paul Stanford
                                                 John Paul Stanford
                                                 State Bar No. 19037350
                                                 Email: jstanford@qslwm.com
                                                 Patrick Lynch
                                                 State Bar No. 24065655
                                                 Email: plynch@qslwm.com

                                         ATTORNEYS FOR PLAINTIFF AMY L.
                                         BOSTIC, TRUSTEE